**Gilbert LITTMAN, Plaintiff,**

v.

**FIRESTONE TIRE & RUBBER COMPANY, Defendant.**

**No. 88 Civ. 3603 (MBM).**

United States District Court, S.D. New York.

June 21, 1989.

Marvin I. Edelstein, Floral Park, N.Y., for plaintiff.

Barry R. Satine, Jones, Day, Reavis & Pogue, New York City, C. Daniel Karnes, Glen D. Nager, Jill J. Beaver, Jones, Day, Reavis & Pogue, Washington, D.C., for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant, Firestone Tire & Rubber Company ("Firestone") renews its motion for summary judgment on plaintiff Gilbert Littman's sole surviving claim: namely, that he was fired for disclosing alleged fraudulent activities by certain unnamed employees under New Jersey's Conscientious Employee Protection Act of New Jersey, N.J.Stat.Ann. § 34:19–1 *et seq.* (1988) (CEPA). In a March 30, 1989 opinion, reported at 709 F.Supp. 461, I dismissed plaintiff's claims that defendant discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (1982) (ADEA) and on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1982) (Title VII). Plaintiff's claim that defendant violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 *et seq.* (1982 & Supp. IV 1986) (RICO) was dismissed as well.

However, I found that plaintiff might make out a claim under CEPA. Under New York choice of law rules,[1] New Jersey law applies to plaintiff's common law wrongful discharge claim. Because New Jersey courts allow common law wrongful discharge claims to assert violations of public policy like CEPA, 709 F.Supp. at 468, I found that plaintiff could allege a CEPA violation.

---

1. In deciding the choice of law issue, I analyzed plaintiff's complaint as a contract claim. New Jersey views wrongful discharge cases as sounding both in contract and in tort. *Potter v. Village Bank of New Jersey,* 225 N.J.Super. 547, 543 A.2d 80, 87 (App.Div.1988), *certif. denied,* 113 N.J. 352, 550 A.2d 462 (1988). Viewing plaintiff's claim as one sounding in tort also supports the conclusion that New Jersey law applies. Like New York's choice of law rules for contract claims, its choice of law rules for tort cases turn on which jurisdiction has the "greatest concern with, or interest in, the specific issue raised in the litigation." *Neumeier v. Kuehner,* 31 N.Y.2d 121, 127, 286 N.E.2d 454, 457, 335 N.Y.S.2d 64, 69 (1972). *See also Babcock v. Jackson,* 12 N.Y. 2d 473, 484, 191 N.E.2d 279, 285, 240 N.Y.S.2d 743, 752 (1963). As plaintiff was employed in defendant's New Jersey office, New Jersey certainly has the greatest interest in ensuring that employers who operate in the state abide by its rules of conduct and not fire whistle-blowers.

The facts of this case are reported extensively in the March 30 opinion, familiarity with which is assumed. Briefly, plaintiff alleges that he was fired because, on July 10 and 14, 1987, plaintiff sent messages to his superiors demanding an investigation into the purchase of a store site in Succasunna, New Jersey. Plaintiff claims that he was near signing a contract for the site for $329,500 when another Firestone negotiator purchased the site for $495,000. According to plaintiff, this incident demonstrates that management officials were defrauding defendant.

Defendant now moves for reargument or, in the alternative, for summary judgment. Defendant has provided additional affidavits and supporting evidence to demonstrate that summary judgment is warranted on this claim. Because defendant's motion for reargument is untimely, it will be considered solely as a renewed motion for summary judgment. Further, defendant asserts that CEPA does not apply to an employee who claims he blew the whistle on fraud committed by management against the company itself.

■ Assuming *arguendo* that plaintiff's allegations state a claim under CEPA, plaintiff has failed to adduce any evidence to demonstrate a *prima facie* case that his whistle-blowing may have played a part in the decision to fire him. This court denied summary judgment on the CEPA claim in its March 30 opinion because defendant had failed to account for a two-and-a-half month gap between defendant's late June decision to fire plaintiff and the actual firing. Because plaintiff sent his memoranda demanding a fraud investigation in mid-July, the timing raised an inference—albeit slight—that plaintiff's whistle-blowing may have played a part in the decision to terminate him. Although defendant had filed an affidavit from Joseph Daniels, plaintiff's immediate supervisor, stating that he decided to fire plaintiff soon after June 19, 1987 when he rated plaintiff as failing to meet the job requirements (Daniels Aff. at ¶ 21; Reber Aff., App. B), defendant failed to account in full for the two and a half

month gap between the decision to fire and the actual termination. 709 F.Supp. at 471.

Defendant has now presented substantial evidence fully explaining the reason for the delay. Although Harry Jones, defendant's manager and Daniels' superior, had authority to terminate plaintiff, defendant's policy required him to afford plaintiff a chance to respond to Daniels' negative evaluation and obtain the personnel manager's concurrence in the discharge decision. (Jones Aff. at ¶ 11; Reber Aff. at ¶ 18 and App. A) On June 22, 1987, Daniels sent the evaluation along with a cover letter instructing plaintiff to respond by June 29, 1987. Plaintiff, however, did not sign and return the appraisal until July 14, 1987, over two weeks after the requested return date and, most importantly here, after plaintiff had sent his memoranda concerning the Succasunna property. (Daniels Supp.Aff. at ¶¶ 21, 22; Reber Aff., App. B) Even then, plaintiff did not fully complete the appraisal; instead he stated that he was sending a separate explanatory letter. (Jones Aff. at ¶ 11) That letter was not received by defendant until August 11, 1987. (Jones Aff., App. F)

In the meantime, Jones sent a memorandum to Jerry K. Reber, defendant's personnel manager based in Ohio, asking for his concurrence in discharging plaintiff. (Jones Aff., App. D) On August 6, 1987, Reber contacted defendant's corporate equal employment opportunity and human resources department because plaintiff was in a "protected age group." (Reber Aff. at ¶ 10 and App. C) That department's manager, G.M. Zemla, asked Reber if plaintiff had received a final warning. Reber contacted Jones and Daniels who confirmed that plaintiff had received a final warning. (Reber Aff. at ¶ 12; Jones Aff. at ¶ 12 and App. E) By then, however, defendant had finally received plaintiff's response to the negative evaluation. Plaintiff's explanations were investigated by both Jones and Reber, who found them meritless. (Reber Aff. at ¶ 15; Jones Aff. at ¶ 13) On August 31, 1987, Zemla and Reber gave final approval to the termination. (Reber Aff. at ¶ 16) Jones was informed of this decision;

accordingly, Jones and Daniels fired plaintiff on September 4. (Jones Aff. at ¶ 15)

Plaintiff has no response to this persuasive evidence other than to assert that the motion for reargument is untimely. Plaintiff is correct; however, defendant's motion is both for reargument *and* for summary judgment. Plaintiff's response to the renewed motion for summary judgment is utter silence. In dismissing plaintiff's age discrimination claim, this court admonished plaintiff for failing to present any evidence other than conclusory statements of discrimination. 709 F.Supp. at 465. Once again, plaintiff has failed to meet his burden on this motion. Although summary judgment is often inappropriate in discrimination claims, where questions of intent abound, *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Plaintiff has failed to present anything other than conclusory statements to support his claim that defendant fired him for exposing fraud. Nor has plaintiff presented any evidence to rebut defendant's strong showing that its decision to fire him was taken for legitimate reasons. *See* 709 F.Supp. at 467. Accordingly, summary judgment is appropriate.

■ Moreover, there is substantial doubt whether a CEPA claim could be maintained here, even if plaintiff did come forward with evidence in response to defendant's showing. In my March 30 opinion, I noted that

[i]t seems illogical to hold that a whistleblower statute, obviously aimed at activity by the company against either the public at large or other individuals or corporations, could apply to a situation where the employee was fired for claiming that some company employees were defrauding the company itself. Because many companies are publicly-held entities, however, it is conceivable that company officers could connive to raid the corporate treasury, such that one could logically posit a situation such as plaintiff's, where company officers could fire an employee for blowing the whistle on fraud within the corporation.

709 F.Supp. at 469.

After reconsidering this matter, I am convinced that the activity plaintiff believed he was exposing—fraud directed solely at the company with the shareholding public only indirectly affected—is not the type of activity the statute was designed to combat, or whose disclosure the statute was designed to protect. Although the brief published legislative history of CEPA provides no explicit guidance on this point and the statutory language is seemingly all-inclusive, the entire thrust of the statute is to protect those who expose activity which hurts primarily the public. Of course, a criminal or fraudulent scheme may at times indirectly injure the corporation that becomes the instrument to execute the scheme, but the statute is concerned primarily with illegal activity which harms the public. The alleged fraud here was conducted solely against the corporation; the public was only indirectly affected insofar as the conspirators' activities injured the corporation and thus the corporation's shareholders. Because the conduct of which plaintiff complains does not work an evil the statute was designed to remedy, common sense mandates that plaintiff's claim be dismissed. 2A C. Sands & N. Singer, *Sutherland Statutory Construction,* § 54.06 at 582 (4th rev. ed. 1984) ("When the natural or literal meaning of statutory language embraces applications which would not serve the policy or purpose for which the statute was enacted or help to remedy the mischief at which it was aimed, the courts may construe it restrictively in order not to give it an effect beyond its equity or spirit. . . . or [so] 'as to shock general common sense.'") (citation omitted).[2]

---

**2.** *See also United Steelworkers of America v.* *Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61

Defendant argues that the statutory language supports this conclusion. Defendant notes that the statute limits protection to employees who disclose an "activity, policy or practice of the *employer.*" N.J.S.A. § 34:19–3(a) (emphasis added). Because the statute defines "employer" as "any individual ... acting *directly or indirectly on behalf of or in the interest* of an employer with the employer's consent" N.J.S.A. § 34:19–2(a) (emphasis added), defendant argues that the term excludes individuals who are acting *against* the interest of the employer by defrauding it.

Defendant's argument is too sweeping. Often, illegal or fraudulent activity by corporate officers, even when directed at the public, hurts the company as well. For example, in *Potter,* 543 A.2d 80, directors used the bank to launder drug money. When the bank's chief executive officer became suspicious, he reported the transactions to the authorities. *Potter,* 543 A.2d at 82. Undoubtedly, these activities were adverse to the bank's interest; in fact, at one point, the directors attempted to obtain favorable loans from the bank. *Id.* Indeed, the portion of the statute which defendant uses to support this theory, the definition of "employer" contained in § 34:19–2(a), seems directed at widening the category of individuals and entities who could be considered "employers" precisely in order to ensnare individuals in high corporate offices who use the company for illegal or fraudulent ends.

Defendant's argument based on the statutory definition of an employer—that any activity that hurts a corporate employer must place an employee who blows the figurative whistle on such activity outside the protection of the statute—is too broad,

as shown above, because it would deny protection to employees whom the New Jersey courts have already held are protected. But that definition does tend to confirm the view expressed above—namely, that the statute is designed to protect employees who blow the whistle on activity undertaken "in the interest of an employer" and perforce against the interest of others. It is not actual or potential injury to the interest of his employer from disclosed activity that would prevent a whistle blowing employee from being covered by the statute, but rather the absence of injury to the interest of others or the public at large from the disclosed activity that would bar such coverage. There is no such injury in this case to the interest of others or the public at large.

For the reasons set forth above, defendant's motion for summary judgment is granted.

SO ORDERED.

L.Ed.2d 480 (1979) ("It is a 'familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.'") (quoting *Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892)); *Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co.,* 326 F.2d 841, 845 (2d Cir. 1963), *cert. denied,* 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964) ("With [Judge Learned Hand's] customary eloquence he stated that 'the duty of ascertaining [the] meaning [of a statute]

is difficult at best, and one certain way of missing it is by reading it literally....'"); *New Jersey Builders, Owners and Managers Assoc. v. Blair,* 60 N.J. 330, 338, 288 A.2d 855, 859 (1972) ("In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law.").