742 A.2d 135

FRANK L. ROACH, PLAINTIFF-RESPONDENT,
v. TRW, INC., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 1, 1999—Decided May 4, 1999—Remanded
by Supreme Court September 16, 1999—Resubmitted
October 6, 1999—Decided November 15, 1999.

Before Judges PETRELLA, D'ANNUNZIO and COLLESTER.

*Epstein Becker & Green*, attorneys for appellant (*Kenneth J. Kelly*, of counsel and on the brief).

*Kenney Schaer & Martin*, attorneys for respondent (*Linda B. Kenney*, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

In this action brought by a former employee, Frank Roach, under the Conscientious Employee's Protection Act (CEPA or the Act), *N.J.S.A.* 34:19–1 to –8, we reversed a judgment entered on a jury verdict in favor of plaintiff. *Roach v. TRW, Inc.*, 320 *N.J.Super.* 558, 727 *A.*2d 1055 (App.Div.1999) (*Roach I* ). The Supreme Court granted plaintiff's petition for certification, 162 *N.J.* 195, 743 *A.*2d 847 (1999), and "summarily remanded to the Appellate Division for reconsideration of the appeal in light of *Higgins v. Pascack Valley Hospital*, 158 *N.J.* 404, 730 *A.*2d 327 (1999)." [1] We have reconsidered our decision in light of *Higgins* and reaffirm our judgment in *Roach I*.

*Roach I* contains a detailed explanation of the evidence. Plaintiff contended that he was discharged because he had disclosed to company superiors certain alleged activities of two co-employees, Jim Vrungos and Vern DeBord. We described these activities in *Roach I*:

> Roach's disclosures were threefold: (1) DeBord's alleged cheating on his expense account regarding a $15.00 lunch; (2) DeBord's approval of a $4,000 lease of computer equipment from a firm in which he or his son allegedly had an interest; and (3) the alleged [personal] interest of Vrungos and DeBord in TRW's acquisition of Nations, an acquisition which never occurred. None of these activities attributed to DeBord or Vrungos constitutes an activity of TRW. These activities were

---

[1] In a prior order, the Supreme Court denied plaintiff's motion for summary reversal of *Roach I*.

not remotely on TRW's behalf and did not advance TRW's interests. To the contrary, if Roach's allegations were true, TRW was the victim.

[*Roach I, supra,* 320 *N.J.Super.* at 570, 727 *A.*2d 1055.]

We held that "the Legislature in enacting CEPA did not intend that the disclosure of employee activities victimizing the employer would fall within CEPA." 320 *N.J.Super.* at 570, 727 *A.*2d 1055. We concluded that "an employee's activities in conflict *solely* with the employer's interests cannot constitute an activity, policy or practice of the employer within the meaning of [*N.J.S.A.* 34:19–3a]." 320 *N.J.Super.* at 571, 727 *A.*2d 1055 (emphasis added). We so ruled in part because section 3a prohibits retaliation for disclosures of "an activity policy or practice of the *employer* ... [which] is in violation of a law, or a rule or regulation ...," *N.J.S.A.* 34:19–3a, and also because the alleged activities of Vrungos and DeBord threatened no public interest and, if true, victimized only the employer. We recognized that "employers, of course, act through their employees. But not every employee action connected with the employment is chargeable to the employer under CEPA." *Roach I, supra,* 320 *N.J.Super.* at 570, 727 *A.*2d 1055.

Approximately one month after we filed *Roach I,* the Supreme Court decided *Higgins,* reversing an Appellate Division decision reported at 307 *N.J.Super.* 277, 704 *A.*2d 988 (App.Div.1998). It involved a claim that plaintiff's employer had retaliated against plaintiff because she had made disclosures to her superior regarding two of her co-employees. *Higgins* was employed by Pascack Valley Hospital as a nurse assigned to the Mobile Intensive Care Unit. She informed her supervisor that two paramedics had violated state regulations by filing the wrong form regarding a call for assistance. Additionally, *Higgins* charged one of the paramedics with the theft of medication from another patient.

The issue in *Higgins* was "whether the CEPA imposes liability on an employer for retaliating against a complaining employee when the employer was not complicit in the conduct of co-employees about which the employee complained." *Higgins, supra,* 158 *N.J.* at 409, 730 *A.*2d 327. The Act provides in part:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2) is fraudulent or criminal; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.[2]

[*N.J.S.A.* 34:19–3.]

### The Court in *Higgins* held:

A plain reading of the statute suggests that the CEPA covers employees who object to the conduct of co-workers. The term "any" in subsection "c" indicates that the statute applies regardless of the source of the activity, policy or practice. Although subsections "a" and "b" limit the statute's application to policies, practices and activities "of" or "by" "the employer," subsection "c" contains no such limitation. The omission of the phrase "of the employer" in subsection "c" is too obvious to ignore.

[*Higgins, supra,* 158 *N.J.* at 419, 730 *A.*2d 327.]

It is important to understand that *Higgins'* holding involved only subsection "c," and the Supreme Court addressed the scope of

---

[2] CEPA was adopted in 1986, *L.*1986, *c.* 105. It was amended in 1989, *L.*1989, *c.* 220, and in 1997, *L.*1997, *c.* 98. We reproduced the statute in *Roach I* and in this opinion with the two amendments, though they are not germane to the issue before us. The Supreme Court's opinion in *Higgins* reproduces only the original Act, undoubtedly because the 1989 amendment is not germane and the 1997 amendment post-dated the events giving rise to the cause of action. The 1997 amendments added specific protection for health care professionals.

that subsection in light of the Legislature's use of the phrase "any activity."

In *Roach I,* we explained that the "jury determined that TRW had violated CEPA by terminating Roach's employment because Roach had disclosed and objected to 'illegal unethical activities.'" *Roach I, supra,* 320 *N.J.Super.* at 560, 727 *A.*2d 1055. Thus, according to the jury, TRW violated subsection 3a and subsection 3c(1). We questioned, however, whether 3c "applies because there were no ongoing activities to object to. Plaintiff's disclosures about Vrungos and DeBord were historical." *Roach I, supra,* 320 *N.J.Super.* at 573, 727 *A.*2d 1055. Arguably, therefore, the Court's holding in *Higgins* is not applicable to TRW's alleged violation of subsection 3a. Nevertheless, due to expansive language in the Court's opinion in *Higgins,* we assume, for the purpose of this analysis, that the Court's holding applies to a subsection 3a violation.

We conclude that *Higgins* does not control the present case because of the absence of a public interest in the alleged activities of Vrungos and DeBord. In *Roach I,* we noted that "CEPA's objective is the protection of the public interest by encouraging the disclosure of *employer* activities potentially harmful to that interest," *Roach I, supra,* 320 *N.J.Super.* at 571, 727 *A.*2d 1055, and we held that Roach's disclosure did not further or protect the public interest because the activities he disclosed did not involve the public interest. We distinguished the Appellate Division's opinion in *Higgins* because it "involved allegations that plaintiff's co-employee[s] had falsified hospital records and had stolen a patient's drugs. Thus, the public was victimized. In the present case, TRW, the employer, was the only victim." *Roach I, supra,* 320 *N.J.Super.* at 572, 727 *A.*2d 1055. Indeed, the jury made a specific finding under subsection 3c(3) that "the activities Roach had disclosed were not 'incompatible with a clear mandate of public policy.'" *Id.* at 560, 727 *A.*2d 1055.

In *Higgins,* the Court reaffirmed CEPA's public interest rationale:

The purpose of the CEPA is to "protect employees who report illegal or unethical work-place activities." *Barratt v. Cushman & Wakefield,* 144 *N.J.* 120, 127, 675 *A.*2d 1094 (1996). Generally speaking, the CEPA codified the common-law cause of action, first recognized in *Pierce v. Ortho Pharm. Corp.,* 84 *N.J.* 58, 72, 417 *A.*2d 505 (1980), which protects at-will employees who have been discharged in violation of a clear mandate of public policy. Thus, the CEPA establishes a statutory exception to the general rule that an employer may terminate an at-will employee with or without cause. *See id.* at 65, 417 *A.*2d 505.

[158 *N.J.* at 417–18, 730 *A.*2d 327.]

The Court repeated the public interest theme acknowledging "the statute's purpose, which was to enact 'broad protections against employer retaliation' for employees who act in the public interest." *Id.* at 420, 730 *A.*2d 327 (quoting *Mehlman v. Mobil Oil Corp.,* 153 *N.J.* 163, 179, 707 *A.*2d 1000 (1998)). With regard to the health-care context of *Higgins,* the Court observed that "[m]isconduct of employees, like that of employers, can threaten the public health, safety, and welfare.... For example, a paramedic's theft of patient medication, whether or not condoned by the hospital, could undermine public health." *Higgins, supra,* 158 *N.J.* at 421, 730 *A.*2d 327.

Moreover, the cases relied on by the Supreme Court in *Higgins* involved facts imbued with a public interest. For example, *Dudewicz v. Norris–Schmid, Inc.,* 443 *Mich.* 68, 503 *N.W.*2d 645 (1993), involved retaliatory action against an employee because he filed a criminal complaint against a co-employee. *Higgins, supra,* 158 *N.J.* at 421–22, 730 *A.*2d 327. There is an obvious public interest in unfettered access to criminal and civil process.

In the present case, Vrungos and DeBord's alleged activities did not implicate the public interest. Applying the Act to these facts would increase its scope exponentially and well beyond the Legislature's objective in enacting CEPA.

Thus, we reaffirm our decision in *Roach I.*[3]

---

[3] In *Roach I,* we did not reach the sufficiency of proof to establish that TRW terminated Roach in retaliation for his disclosures. 320 *N.J.Super.* at 573, 727 *A.*2d 1055. We do not address the issue here because it was not part of the

---

Supreme Court's mandate in remanding for our reconsideration in light of *Higgins*.