CATHERINE CORRIGAN, ADMINISTRATRIX *AD PROSE-QUENDUM* OF THE ESTATE OF EDWARD J. CORRIGAN, Sr., AKA EDWARD J. CORRIGAN AND EDWARD CORRIGAN, PLAINTIFF-APPELLANT, v. FREDERICK J. GASSERT, JR., DIRECTOR OF THE DIVISION OF MOTOR VEHICLES IN THE DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY, AND THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT-RESPONDENT.

Argued April 21, 1958—Decided June 2, 1958.

228

*Mr. Charles L. Bertini* argued the cause for the appellant (*Mr. Macy Davidson* on the brief).

*Mr. Robert B. Kroner* argued the cause for the respondent (*Messrs. Cummis & Kroner,* attorneys; *Mr. Clive Cummis* on the brief).

The opinion of the court was delivered by

PROCTOR, J. Plaintiff, the administratrix *ad prosequendum* of the estate of her husband, Edward J. Corrigan, Sr., appeals from a summary judgment of the Superior Court, Law Division, dismissing her complaint, which sought recovery out of the Unsatisfied Claim and Judgment Fund, *L.* 1952, *c.* 174, *p.* 570 as amended, *N. J. S. A.* 39:6–61 to 91. The sole ground for the dismissal was that the plaintiff failed to comply with the provisions of *N. J. S. A.* 39:6–78 and *N. J. S. A.* 39:6–65, which required the filing of a notice of intention within 30 (now 90) days of the date of the accident as a condition precedent to the entering of a judgment against the Director of the Fund. We granted certification on our own motion prior to consideration by the Appellate Division.

Plaintiff's intestate was killed on December 24, 1955, when he was struck down by a speeding automobile while he was attempting to cross Hoboken Road in East Rutherford, New Jersey. The vehicle continued on its way and neither it nor its driver was identified. As a result of an investigation by the East Rutherford police, one George Roberts, Jr. was apprehended and charged with leaving the scene of the accident. On January 5, 1956, 11 days after the accident, Roberts was convicted as charged in the East Rutherford Municipal Court. The record does not disclose that an appeal was taken.

The decedent left surviving him his wife, the plaintiff herein, two sons and a daughter. The children were not dependent upon the decedent.

On May 16, 1956 the plaintiff, upon learning that Roberts was uninsured, filed a notice of intention to make a claim against the Fund for damages resulting from the death of her husband. On September 28, 1956 she was appointed administratrix *ad prosequendum* by the Surrogate of Bergen County. On October 11, 1956 she filed a second notice of intention with the Fund. On October 15, 1956 the plaintiff instituted an action against Roberts in the Bergen County Court seeking damages for the wrongful death of her husband.

A copy of the complaint was filed with the Unsatisfied Claim and Judgment Board on October 25, 1956. The case came on for trial on April 1, 1957. The jury was requested to make a special finding as to whether or not the decedent was struck by Roberts' motor vehicle. In response to that request the jury, on April 3, 1957, found there was not sufficient evidence to establish that Roberts' automobile had struck the decedent and brought in a verdict of "No Cause for Action." That verdict was premised upon the sole ground that the decedent's death was occasioned by a motor vehicle the identity of which had not been established.

On May 16, 1957 the plaintiff commenced the present action against the Director pursuant to *N. J. S. A.* 39:6–79. The Director moved for summary judgment on the ground that the plaintiff had failed to file a notice of intention within 30 days after the accident. The trial court granted summary judgment for the defendant, stating:

"The statute provides that when the death of a person arises out of the use of a motor vehicle in this State, but the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained, an action for damages may be brought against the Director of the Division of Motor Vehicles. *R. S.* 39:6–78. No judgment, however, shall be entered against the said Director if the notice of intention to make a claim for damages against the Board was not given within 30 days after the accident, unless the giving of such notice was prevented by physical incapacity. *R. S.* 39:6–65,–78.

In this case, the notice of intention not having been given the Board within 30 days after the accident, and no physical incapacity prevented the giving of such a notice, there will be a judgment for the defendant dismissing the complaint."

The plaintiff on this appeal urges that the notice provisions of *N. J. S. A.* 39:6–65 are not applicable to an action instituted pursuant to *N. J. S. A.* 39:6–79. She further contends that the filing of a notice of intention within 30 days after her appointment as administratrix *ad prosequendum,* although later than 30 days from the date of the accident, was a sufficient compliance with *N. J. S. A.* 39:6–65.

The defendant contends that the argument made by the plaintiff, *i. e.,* that she need not file any notice since her

action is predicated on *N. J. S. A.* 39:6–79, "is in conflict with the manifest mandate of the Legislature which declares that any claim against the Fund must be preceded by timely notice" and that "such an argument flies blindly into the clearest wording of the statute."

The issue presented is whether the administratrix *ad prosequendum* of a victim of a "hit and run" accident, who had instituted an action to recover damages against a person believed to have been the tortfeasor but which resulted in a judgment in favor of the defendant on the sole ground that the death was caused by a motor vehicle whose identity and that of its owner and operator had not been established, is barred from maintaining an action against the Director pursuant to *N. J. S. A.* 39:6–79, where the claimant did not file a notice of intention to make a claim against the Fund within 30 (now 90) days after the accident.

*N. J. S. A.* 39:6–79 provides:

"When in an action * * * in respect to the death of, or personal injury to, any person, arising out of the ownership, maintenance or use of a motor vehicle in this State * * * judgment is rendered for the defendant on the sole ground that such death or personal injury was occasioned by a motor vehicle—

(a) The identity of which, and of the owner and operator of which, has not been established, or

(b) Which was in the possession of some person other than the owner or his agent without the consent of the owner and the identity of the operator has not been established, such cause shall be stated in the judgment and the plaintiff in such action may within 3 months from the date of the entry of such judgment make application for authority to bring an action upon said cause of action against the director in the manner provided in section 18 [*N. J. S. A.* 39:6–78]."

 It should be noted parenthetically that the requirement that an application for authority to bring an action against the Director has been dispensed with as a result of the amendment of *N. J. S. A.* 39:6–78 by *L.* 1956, *c.* 150, *p.* 618. Thus, the pertinent part of *N. J. S. A.* 39:6–79 should be construed to read that such a claimant "may within 3 months from the date of the entry of such judg-

ment bring an action upon said cause of action against the Director in the manner provided in *N. J. S. A.* 39:6–78."

The pertinent provisions of *N. J. S. A.* 39:6–78 are as follows:

"When the death of, or personal injury to, any person arises out of the ownership, maintenance or use of a motor vehicle in this State * * * but the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained or it is established that the motor vehicle was at the time said accident occurred, in the possession of some person other than the owner without the owner's consent and that the identity of such person cannot be ascertained, any qualified person who would have a cause of action against the operator or owner or both in respect to such death or personal injury * * * may, bring an action therefor against the director in any court of competent jurisdiction but no judgment against the director shall be entered in such an action unless the court is satisfied, upon the hearing of the action, that—

(a) The claimant has complied with the requirements of section 5 [*N. J. S. A.* 39:6–65].

 * * * * * * * *."

The relevant portions of *N. J. S. A.* 39:6–65, prior to its amendment, *L.* 1956, *c.* 200, *p.* 737, which extended the time for giving notice to 90 days, were as follows:

"Any qualified person, or the personal representative of such person, who suffers damages resulting from bodily injury or death or damage to property arising out of the ownership, maintenance or use of a motor vehicle in this State * * * and whose damages may be satisfied in whole or in part from the fund, shall, within thirty days after the accident, as a condition precedent to the right thereafter to apply for payment from the fund, give notice to the board, on a form prescribed by it, of his intention to make a claim thereon for such damages if otherwise uncollectible and otherwise comply with the provisions of this section; * * *"

The primary object of the Unsatisfied Claim and Judgment Fund law is to provide a measure of relief for persons who sustain losses or injury inflicted by financially irresponsible or unidentified owners or operators of motor vehicles, where such persons would otherwise be remediless. *Dixon v. Gassert,* 26 *N. J.* 1 (1958). To effectuate that objective, the statute embodies two distinct procedures to

be pursued by a claimant who seeks to recover from the Fund. The procedure to be followed by a particular claimant depends upon whether or not the identity of the tortfeasor who inflicted the injury can be ascertained. Where the identity of the operator or owner of the vehicle is known, the provisions of *N. J. S. A.* 39:6–65 to 77 govern. In this situation, the statute provides that where a qualified person has recovered a judgment against a known tortfeasor which proves to be uncollectible, an application may be made to the court in which the judgment was entered for an order directing payment of that judgment out of the Fund up to a maximum of $5,000. But where the claimant is the victim of a "hit and run" accident and is unable to obtain a judgment because the identity of the motor vehicle or that of the owner or operator is unknown, the provisions of *N. J. S. A.* 39:6–78 to 85 specify the appropriate procedure. In this situation the statute provides that a qualified claimant may bring an action against the Director in the first instance and that any judgment thus obtained shall be paid out of the Fund up to a maximum of $5,000. In either case, however, whether the identity of the tortfeasor be known or unknown, the provisions of *N. J. S. A.* 39:6–65 are expressly made applicable. Those provisions require as a condition precedent to recovery from the Fund that a notice of intention to make a claim against the Fund be filed within 30 (now 90) days after the accident.

However, the Legislature apparently recognized that a third class of claimants might exist, namely, those victims of "hit and run" accidents who have a reasonable basis for believing that they know the tortfeasor's identity and in reliance thereon institute an action for damages against that person. In all probability the Legislature's recognition of the fact that in the event such an action resulted in a judgment that the person sued was not the person who caused the plaintiff's loss the victim would then be without recourse to the Fund, accounts for the inclusion in the Fund law of *N. J. S. A.* 39:6–79, which provides a method designed to afford a remedy for this class of claimants. *N. J. S. A.*

39:6–79 does not provide a new procedure to be pursued by this third class of claimants. Instead, this section states that when a judgment of the type described therein is entered the plaintiff may bring an action against the Director within three months from the date of entry of such a judgment *"in the manner provided in section* 18 [*N. J. S. A.* 39:6–78]." However, if *N. J. S. A.* 39:6–79 is read literally it operates to make the filing of a notice of intention within 30 (now 90) days a condition precedent to obtaining a judgment against the Director by invoking the procedural requirements of *N. J. S. A.* 39:6–78, which include the notice provision of *N. J. S. A.* 39:6–65.

If the Legislature intended that a claimant who seeks to proceed under *N. J. S. A.* 39:6–79 must first file a notice of intention within 30 days after the accident, it is indeed difficult to perceive what purpose, if any, that section could possibly serve. There would certainly be no need to expressly preserve the right of recourse to the Fund to a claimant who had previously given the required notice, if a judgment of the type described in *N. J. S. A.* 39:6–79 is rendered against such a claimant. For if the claimant had filed the required notice he would have preserved his right of recourse to the Fund whether or not the judgment stated that the identity of the tortfeasor had not been established. It is inconceivable that the Legislature enacted *N. J. S. A.* 39:6–79 for the sole purpose of restricting the time in which a victim of a "hit and run" accident, who had given the required notice, may perfect his claim against the Fund to three months, where he diligently but mistakenly seeks to judicially establish his assailant's identity. It is especially unlikely that *N. J. S. A.* 39:6–79 was enacted to serve this purpose in view of the fact there is no provision in any other section of the act restricting the time within which a claimant must prosecute a claim against the Fund where the identity of the tortfeasor is either definitely ascertained or definitely unascertained. Yet if the section were strictly construed, it would appear that no purpose would be served other than the limitation of the time available to such a

claimant to proceed against the Fund. But there exists an even more persuasive reason why a literal interpretation of *N. J. S. A.* 39:6–79 could not have been intended by the Legislature.

In the case *sub judice* the decedent concededly was at the time of the accident the victim of a "hit and run" accident of the type contemplated by *N. J. S. A.* 39:6–78. Neither the vehicle nor its owner or operator were identified at that time. It is undisputed that a notice of intention was not filed within 30 days after December 24, 1955, the date of the accident. If nothing more appeared, it is clear that any future claim against the Fund would have been barred for such failure. However, 11 days after the accident, Roberts was apprehended by the police and charged with and convicted of leaving the scene of the accident. At that time, by reason of Roberts' conviction, the plaintiff had probable cause to believe that he was the person who wrongfully caused the decedent's death, and in good faith she sought recovery from him without first filing a timely notice of intention to make a claim against the Fund. It could not be said at that time that the identity of the motor vehicle involved and its operator was unknown. At this juncture the plaintiff could not have proceeded pursuant to *N. J. S. A.* 39:6–78 which deals only with the situation where the tortfeasor's identity is unknown. Nor was the tortfeasor's identity definitely known at that time as the subsequent jury verdict, which found that Roberts was not the culprit, so aptly demonstrated. Therefore, the procedure specified in *N. J. S. A.* 39:6–65 to 77, which govern the situation where the tortfeasor's identity is known, was not applicable.

It seems reasonably clear that the Legislature could not have intended that the notice provisions referred to in *N. J. S. A.* 39:6–78 apply to a claimant who seeks to proceed against the Director pursuant to *N. J. S. A.* 39:6–79, inasmuch as such a claimant could not know with certainty that *N. J. S. A.* 39:6–78 would be applicable until after a judgment of the type contemplated in *N. J. S. A.* 39:6–79

was entered against him. It would be manifestly impossible to obtain such a judgment within 30 days after the accident. Thus, it would appear that *N. J. S. A.* 39:6–79 was intended to provide a remedy for the victim of a "hit and run" accident who had not filed a notice of intention where the victim had probable cause to believe that the wrongdoer's identity was known and in reliance upon that belief instituted an action for damages against such person without any thought of proceeding against the Fund. The section reflects legislative cognizance of the fact that a court or jury oftentimes does not agree with an injured plaintiff as to the identity of a fleeing vehicle and its operator. It seems evident that the Legislature did not intend to impose the impossible requirement of filing a notice of intention in advance of trial, indeed, within 30 days after the accident, upon a claimant who in good faith and with probable cause instituted an action against the person believed to be the actual wrongdoer, when, if he were successful in that endeavor, the Fund would have been relieved from all liability. Obviously, the Legislature intended to give a person so situated as the plaintiff a right to proceed against the Director within three months after the entry of the judgment. It never intended that this right be illusory in that the plaintiff would be required by the provisions of *N. J. S. A.* 39:6–78 to show that she had given notice within 30 days after the accident where she had no reason to believe that *N. J. S. A.* 39:6–78 would be applicable until after a judgment of the type described in *N. J. S. A.* 39:6–79 was obtained. We cannot impute such apparent inconsistency to the Legislature. It is this anomaly that requires rejection of the literal sense of *N. J. S. A.* 39:6–79, if that section is to have any real significance in keeping with the remedial spirit of the legislative design.

■■ The Unsatisfied Claim and Judgment Fund Law is to be liberally construed to advance the remedy with due regard to the fulfillment of the essential legislative design while protecting the Fund against possible fraud or abuse. *Giles v. Gassert,* 23 *N. J.* 22, 34 (1955). There Justice

238

Heher said: "The literal sense of the terms is not to have ascendency over the reason and spirit of the expression as a whole." Again in *Alexander v. New Jersey Power & Light Co.*, 21 *N. J.* 373, at *page* 378 (1956) this court, when faced with a problem of statutory construction, stated:

> "The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptation. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. *Wright v. Vogt*, 7 *N. J.* 1 (1951). It is not the meaning of isolated words but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and policy of the act rather than the literal sense of particular terms, standing alone. *Caputo v. Best Foods, Inc.*, 17 *N. J.* 259 (1955)."

It should be emphasized, however, that to prevent the imposition of any possible fraud or abuse upon the Fund, any action instituted against a third person which results in the type of qualifying judgment contemplated in *N. J. S. A.* 39:6-79 must be shown to have been instituted by a claimant with probable cause for believing that the person sued was in fact the actual wrongdoer and with an honest belief, unaffected by information to the contrary, that the person sued could in fact respond in damages in the event his liability was established. While in the present case it appears that the plaintiff knew that Roberts was uninsured at the time she instituted the action against him, there is no showing that Roberts would have been unable to satisfy

a judgment entered against him. The fact that a person is uninsured does not establish that he is financially irresponsible.

We conclude that the language of *N. J. S. A.* 39:6–79, which provides that a claimant who seeks to maintain an action against the Director pursuant to that section may proceed "in the manner provided in section 18 (*N. J. S. A.* 39:6–78)," was not intended to make the notice provision referred to in the latter section a condition precedent to the maintenance of such an action where a claimant who had probable cause to believe that he knew the identity of the tortfeasor, who fled the scene of the accident, instituted an action against that person in good faith and a judgment of the type described in *N. J. S. A.* 39:6–79 was entered against him.

Our construction requires that the judgment be reversed and remanded. The question of plaintiff's good faith can be fully explored upon remand. Additionally, since the case is to be remanded, it should be pointed out that there is no merit in the second point raised by the plaintiff. The decedent's widow, the plaintiff herein, was clearly a "qualified person" to give notice prior to her appointment as administratrix *ad prosequendum*. *Murray v. Gassert*, 23 *N. J.* 22, 34 (1956).

The judgment is reversed and remanded.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, JACOBS, FRANCIS and PROCTOR—5.

*For affirmance*—Justices WACHENFELD and BURLING—2.