697 A.2d 568

ANITA BOSE, APPELLANT, v. BOARD OF REVIEW AND MUTUAL PHARMACEUTICAL, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted July 22, 1997—Decided August 4, 1997.

Before Judges PAUL G. LEVY and HUMPHREYS.

*Anita Bose*, appellant *pro se*.

*Peter Verniero*, Attorney General, attorney for respondent Board of Review (*Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Alan C. Stephens*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

The claimant appeals from a decision of the Board of Review of the New Jersey Department of Labor which held her ineligible for "additional benefits during training." *See N.J.S.A.* 43:21–60(e)(1). The claimant is a chemist. The Board found that her

desire to enter training to merely learn computer skills and word processing to enhance the chances of her finding work in a field wherein she already has

education and experience is admirable, but not the purpose of the Additional Benefits during Training statute and certainly not "training for a labor demand occupation."

Claimant maintains that she has met the criteria for additional benefits under the statute. We agree and reverse.

The claimant has a bachelors degree in chemistry and has earned graduate credits toward a masters degree in chemistry. She was laid off in February 1995 by her employer due to the employer's "downsizing." She filed for and collected unemployment compensation benefits for February and then found temporary work in March 1995. She testified that she resigned from her last position because of a medical problem.

In November 1995, she decided to enroll in a community college and take courses in computer programming and word processing. She thought these courses would give her additional administrative skills which would enhance her chance of being re-employed in the chemistry field. She applied for and was denied unemployment compensation benefits under the Workforce Development Partnership Program. See N.J.S.A. 43:21–57 to –66.

The workforce development legislation was enacted in 1992 in response to the economic downturn in the late 1980's. The legislation provides additional unemployment benefits to displaced employees while they are in training or receiving education in order to acquire marketable skills. See N.J.S.A. 43:21–57 to –66. The Legislature found:

The effectiveness of current programs to retrain displaced workers during the time that they receive unemployment benefits is hindered by the limited duration of those benefits, which often drives displaced workers into short-term retraining programs with limited skill enhancement or results in the programs' avoiding the selection of trainees who need more extensive training to succeed.

[N.J.S.A. 43:21–57(e).]

The legislation would address this problem because:

It would increase the effectiveness of programs which provide retraining to displaced workers if the unemployment benefit period could be extended in cases where the longer benefit period is necessary to provide needed in-depth education and training.

[*N.J.S.A.* 43:21–57(f).]

The Legislature concluded:

It is therefore an appropriate public purpose, beneficial to workers and employers and the longterm economic development of New Jersey, to use a limited amount of unemployment compensation funds to provide extended unemployment benefits as needed to enable displaced workers to obtain the high quality training and education required for success in occupations where there are demonstrated longterm shortages of skilled labor.

[*N.J.S.A.* 43:21–57(i).]

The statutory scheme defines a "labor demand occupation" as

an occupation for which there is or is likely to be an excess of demand over supply for adequately trained workers, including, but not limited to, an occupation designated as a labor demand occupation by the New Jersey Occupational Information Coordinating Committee pursuant to [*N.J.S.A.* 34:1A–79].

[*N.J.S.A.* 43:21–58.]

The term "remedial education" is defined as

any literacy or other basic skills training or education which may not be directly related to a particular occupation but is needed to facilitate success in vocational training or work performance.

[*Ibid.*]

The statute defines the term "vocational training" as

training or education which is related to an occupation and is designed to enhance the marketable skills and earning power of a worker or job seeker.

[*Ibid.*]

The statute provides that additional unemployment benefits shall *not* be denied for any of the following reasons:

the training includes remedial education needed by the individual to succeed in the vocational component of the training; the training is part of a program under which the individual may obtain any college degree enhancing the individual's marketable skills and earning power; the length of the training period under the program; or the lack of a prior guarantee of employment upon completion of the training.

[*N.J.S.A.* 43:21–60(g).]

The testimony of the claimant supports her position that she meets the criteria in the statute. She states that she would like to take courses which provide additional training for the specific instruments with which she would be working as a chemist. She also wants to take courses at Mercer County Community College in computer programming and word processing. She testified

that in the chemistry field "there are lots of different kinds of skills that you need" to become re-employed as a chemist and that she had to "catch up" on those skills. She states in her brief before us that many employers require chemists to have word processing skills and that she lost several positions because of her lack of word processing skills. She states in her reply brief that she had been rejected for many jobs "due to insufficient level of competence in computer science and word processing" and that "many chemistry jobs require a level of competence in computer programming and word processing." She maintains that chemistry is a labor demand occupation. She has attached to her reply brief a number of advertisements "as evidence that many chemistry jobs require a level of competence in computer programming and word processing."

The decisions of an administrative agency carry a presumption of correctness. *Gerba v. Board of Trustees*, 83 *N.J.* 174, 189, 416 *A.*2d 314 (1980) (agency decisions should not be overturned except where the decision is arbitrary, capricious and unreasonable or not supported by substantial credible evidence in the record as a whole); *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980). Notwithstanding these considerations, we find the claimant's arguments to be persuasive. Nothing in the record is at variance with her position that she is a displaced worker, that she has had difficulty in obtaining a permanent job because of her lack of additional training in chemistry and data processing and that chemists today are generally required to have data processing skills. The advertisements also suggest that the chemistry field is a labor demand occupation and that additional training to acquire data processing skills would likely enhance the claimant's "marketable skills and earning power" in the field of chemistry. *See N.J.S.A.* 43:21–60(g).

In view of the foregoing and the beneficial purposes of the Unemployment Compensation Act and the 1992 amendment, we conclude that the Board of Review has taken too restrictive a view of this claim. *See Carpet Remnant Warehouse, Inc. v. New*

*Jersey Dep't of Labor,* 125 *N.J.* 567, 580–81, 593 *A.2d* 1177 (1991) (the Unemployment Compensation Law is remedial legislation which should be liberally construed). Granting benefits here is consistent with the beneficial purpose of the 1992 legislation to assist workers in obtaining additional training and skills to enable them to obtain employment in our rapidly changing and demanding economic environment.

Reversed.