702 A.2d 1363

CAROLYN R. CRUSCO, PLAINTIFF-APPELLANT, v. OAKLAND
CARE CENTER, INC., LAUREN ALLEN, AND SUSAN
GROSSER, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted April 28, 1997—Decided December 3, 1997.

Before Judges HAVEY, BROCHIN and KESTIN.

*Edward G. O'Byrne,* attorney for appellant.

*Wolff & Samson,* attorneys for respondents (*Catherine P. Wells,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Plaintiff appeals on leave granted from the trial court's order dismissing three counts of her amended complaint asserting causes of action for wrongful discharge and assault and battery. We affirm in part and reverse in part.

On August 24, 1994, plaintiff was discharged from her employment as an activities assistant at defendant Oakland Care Center (Center). Defendant Laura Allen, the recreation director of the Center, was plaintiff's immediate supervisor. Defendant Susan Grosser was the administrator of the Center.

The complaint, as initially filed on March 19, 1996, was in five counts. The first count asserted a cause of action for wrongful discharge arising from the statute establishing the Office of the Ombudsman for the Institutionalized Elderly (Ombudsman Act or Act), *N.J.S.A.* 52:27G–1 to –31, specifically *N.J.S.A.* 52:27G–14a. The latter provision prohibits, *inter alia,* disciplinary or retaliato-

ry action against any employee of a covered facility for reporting violations of the Act's standards, and establishes such disciplinary or retaliatory action to be a crime of the fourth degree. The second count of the complaint pled a cause of action for wrongful discharge pursuant to the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19-1 to -8, which prohibits, *inter alia,* retaliatory action against an employee for disclosing unlawful activity of the employer. The third count charged that Allen had committed an assault and battery on plaintiff, with resulting injuries, during a confrontation about a report plaintiff was alleged to have made to the Office of the Ombudsman about Allen and the Center. The fourth count asserted vicarious liability on the part of the Center for the conduct attributed to Allen, and repeated the retaliatory discharge cause of action based on *N.J.S.A.* 52:27G–14a. The fifth count pled a common law action for wrongful discharge.

On July 23, 1996, defendants, without joining issue, filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. *R.* 4:6–2(e). The motion was returnable on August 9, 1996. The bases of the motion were the one-year statute of limitations in CEPA, *N.J.S.A.* 34:19-5, the CEPA waiver provision, *N.J.S.A.* 34:19-8, and the absence of a private cause of action under the Ombudsman Act, *N.J.S.A.* 52:27G–14a.

On July 31, 1996, plaintiff filed an amended complaint which deleted the second count, the CEPA claim. The remaining four counts of the complaint were renumbered and restated, but were essentially unaltered.

After oral argument of the motion, the trial court dismissed all counts of the amended complaint except the second, containing the assault and battery cause of action against Allen. In an oral opinion, the motion judge based her decision upon the CEPA waiver provision:

[T]he institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

[*N.J.S.A.* 34:19–8.]

We hold the application of the foregoing provision to bar plaintiff's common law wrongful discharge cause of action to have been erroneous. The trial court erred, as well, in dismissing plaintiff's vicarious liability claim against the Center, subsumed in the third count of the amended complaint, for the tort allegedly committed by Allen. We conclude, however, for reasons different from those employed by the motion judge, that the trial court appropriately dismissed the first count of the amended complaint, alleging a cause of action for violating the Ombudsman Act, as well as the portion of the third count which repeated that claim. Hence, we affirm in part and reverse in part, remanding for further proceedings in respect of the second and fourth counts of the amended complaint, as well as the portion of the third count which alleges the Center's vicarious tort liability.

As a matter of logic and fair-minded interpretation, in the circumstances presented, the CEPA waiver provision cannot be seen as having the pervasive sweep attributed to it by the motion judge. Via the interpretation accorded, mere mention of a CEPA claim in a complaint precludes any other cause of action to vindicate the plaintiff's employment rights, even where the plaintiff is barred from asserting the CEPA claim. Such a view frustrates the very reason for CEPA's adoption as reflected in a portion of its formal title: "An Act to protect employees from retaliatory action by employers[.]" *See* L.1986, c. 105.

CEPA was adopted as remedial legislation, designed to expand employee protection, *Barratt v. Cushman & Wakefield,* 144 *N.J.* 120, 127, 675 *A.*2d 1094 (1996); *Young v. Schering Corp.,* 141 *N.J.* 16, 26, 660 *A.*2d 1153 (1995); *Abbamont v. Piscataway Bd. of Educ.,* 138 *N.J.* 405, 418, 431, 650 *A.*2d 958 (1994), and patently not to be used as a weapon to limit employees in vindicating their rights after suffering retaliation for conduct warranting protection. For good and ample reason, the Legisla-

ture saw fit to establish CEPA claims, when asserted, as exclusive remedies in respect of employment interest rights arising in factually related contexts. Yet, that must be seen as the furthest reach of the limitation. Classically, remedial legislation such as CEPA is to be accorded liberal construction. *Barratt v. Cushman & Wakefield, supra,* 144 *N.J.* at 127, 675 *A.*2d 1094; *Abbamont v. Piscataway Bd. of Educ., supra,* 138 *N.J.* at 431, 650 *A.*2d 958; *see also, e.g., Bose v. Board of Review,* 303 *N.J.Super.* 619, 623–24, 697 *A.*2d 568 (App.Div.1997); *Prettyman v. State,* 298 *N.J.Super.* 580, 591, 689 *A.*2d 1365 (App.Div.1997); *Washington v. Market Transition Facility,* 295 *N.J.Super.* 368, 372, 685 *A.*2d 57 (App. Div.1996); *Tung v. Briant Park Homes, Inc.,* 287 *N.J.Super.* 232, 238, 670 *A.*2d 1092 (App.Div.1996); *Zorba Contractors, Inc. v. Newark Housing Auth.,* 282 *N.J.Super.* 430, 435, 660 *A.*2d 550 (App.Div.1995); *Green v. Continental Rentals,* 292 *N.J.Super.* 241, 252, 678 *A.*2d 759 (Law Div.1994). Logically, therefore, any stated limitation on its sweep or applicability must be strictly construed. *Eagle Truck Transport, Inc. v. Board of Review,* 29 *N.J.* 280, 286, 148 *A.*2d 822 (1959) ("In seeking the intent manifested by … phraseology we cannot be unmindful of our obligation to interpret any ambiguity therein so as to accomplish, if possible, the beneficent social purpose of the Legislature. That objective is not achieved by a rigid, narrow connotation which contravenes the basic spirit and central scheme of the law."); *Hall v. Minder,* 298 *N.J.Super.* 243, 248–49, 689 *A.*2d 207 (App.Div.), *certif. denied,* 149 *N.J.* 408, 694 *A.*2d 193 (1997) ("[R]emedial legislation … 'is to be liberally construed to advance the remedy with due regard to the fulfillment of the essential legislative design....' [quoting *Corrigan v. Gassert,* 27 *N.J.* 227, 237, 142 *A.*2d 209 (1958) ].... 'Furthermore, a court should avoid a literal interpretation of individual statutory terms or provisions that would be inconsistent with the overall purpose of the statute.' [quoting *Young v. Schering Corp., supra,* 141 *N.J.* at 25, 660 *A.*2d 1153]").

[A] statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest

reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptation. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. *Wright v. Vogt,* 7 *N.J.* 1 [80 *A.*2d 108] (1951). It is not the meaning of isolated words, but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and policy of the act rather than the literal sense of particular terms, standing alone. *Caputo v. Best Foods, Inc.,* 17 *N.J.* 259 [111 *A.*2d 261] (1955).

[*Alexander v. New Jersey Power & Light Co.,* 21 *N.J.* 373, 378–79, 122 *A.*2d 339 (1956).]

We note as well in this connection that the Supreme Court has specifically determined that "[t]he internal structure of the waiver provision also supports its narrow application." *Young v. Schering Corp., supra,* 141 *N.J.* at 27, 660 *A.*2d 1153.

The trial court's interpretation of the CEPA waiver provision was excessively literal, leading to an all-too-broad restriction on this plaintiff's ability to sue for wrongful discharge. As the Supreme Court has observed, albeit in a different contextual application of the CEPA waiver provision:

It would be paradoxical to interpret the waiver provision literally to hold that although the employee has claims independent of a time-barred CEPA claim, the mere filing of the CEPA claim requires dismissal of all other claims. We reject defendant's literal reading of the waiver provision because, as Judge Learned Hand said, "[t]here is no surer way to misread any document than to read it literally." *Guiseppi v. Walling,* 144 *F.*2d 608, 624 (2d Cir.1944), *aff'd sub nom., Gemsco, Inc. v. Walling,* 324 *U.S.* 244, 65 *S.Ct.* 605, 89 *L.Ed.* 921 (1945).

[*Id.* at 26, 660 *A.*2d 1153.]

 Plaintiff was, from the outset, barred by reason of the passage of time, *i.e.,* the one-year statutory limitation in *N.J.S.A.* 34:19–5, from litigating her rights under CEPA. Because plaintiff lacked the right to make the CEPA claim after the statutory time limit had passed, it was illogical to view her as barred by the effect

of asserting it. There is nothing in the whole of CEPA that can be taken to suggest a legislative intendment to extinguish other claims of employment right. Indeed, the introductory language of the waiver provision itself belies any such purpose: "Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract[.]" *N.J.S.A.* 34:19–8. The provision goes on to prescribe an exception to this general design by way of merely requiring a plaintiff, effectively, to make an election of available remedies. *Young v. Schering Corp., supra,* 141 *N.J.* at 27, 660 *A.*2d 1153. It is, in sum, quite obvious that an employee who is barred from making a CEPA claim has no remedy under the Act and cannot, therefore, be seen to have any options from which to elect. *See ibid.* Thus, when this plaintiff erroneously pled an unavailable CEPA claim, no bar could attach in respect of any other available claims of wrongful discharge. The second count, as originally formulated, had no more legal effect than a smudge on the face of the complaint.

In the particular circumstances of this case, there may also be an alternative basis for viewing plaintiff's other employment rights remedies not to be subject to the CEPA waiver. Under *R.* 4:9–1, plaintiff was permitted, without seeking the consent of her adversaries or leave of court, to amend her complaint "as a matter of course at any time before a responsive pleading [was] served." This complaint was amended before issue was joined. It may well be, even for plaintiffs with live CEPA claims, that a withdrawal of a CEPA cause of action before issue is joined—especially before any demonstrable prejudice accrues to the named defendants- nullifies any election of remedies that may have occurred by operation of *N.J.S.A.* 34:19–8. In this connection, the Supreme Court has already observed:

> The waiver provision raises several complex questions as to the extent of its application and its interaction with other sources of law.

> Although the waiver provision does not use language of estoppel, "institution of an action" may be susceptible of meaning something other than the filing of a complaint as contemplated by *Rule* 4:2–2. The meaning of "institution of an action" could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete or the time of a pretrial conference contemplated by *Rule* 4:25–1. Another question is whether the statutory waiver is applicable if the CEPA claim is withdrawn or otherwise concluded prior to judgment on the merits.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*
>
> Those and other significant questions are not decided in this case.
>
> [*Young v. Schering Corp., supra,* 141 *N.J.* at 32–33, 660 *A.*2d 1153.]

■ It is also obvious that plaintiff's cause of action based upon the Center's vicarious liability for Allen's alleged tortious acts in the course of her employment, *see Abbamont v. Piscataway Bd. of Educ., supra,* 138 *N.J.* at 416, 650 *A.*2d 958; *Lehmann v. Toys 'R' Us, Inc.,* 132 *N.J.* 587, 619–20, 626 *A.*2d 445 (1993); *Restatement (Second) of Agency* § 219 (1958), is not subject to the CEPA waiver provision. It "do[es] not resemble the alleged CEPA violations and require[s] different proofs than those needed to substantiate the CEPA claim." *Young v. Schering Corp., supra,* 141 *N.J.* at 31, 660 *A.*2d 1153 (quoting lower court decision, 275 *N.J.Super.* 221, 238, 645 *A.*2d 1238 (App.Div.1994)). Thus, the third count of the complaint should not have been dismissed to the extent it was based upon a vicarious liability tort claim.

■ One issue remains: whether plaintiff may base a wrongful discharge claim upon the provision in the Ombudsman Act prohibiting retaliatory acts, *N.J.S.A.* 52:27G–14a. Where a statute does not explicitly confer a private right of action for persons who may be harmed by violations of it, the determination whether a private cause of action implicitly exists is governed, in part, by the standards articulated by the United States Supreme Court for testing federal rights of action in *Cort v. Ash,* 422 *U.S.* 66, 95 *S.Ct.* 2080, 45 *L.Ed.*2d 26 (1975), as adopted by the Supreme Court of New Jersey in *In re State Comm'n of Investigation,* 108 *N.J.* 35, 527 *A.*2d 851 (1987):

> [w]hether the plaintiff is "one of the class for whose especial benefit the statute was enacted;" whether there is any evidence that the Legislature intended to create a private cause of action under the statute; and whether implication of a private cause of action in this case would be "consistent with the underlying purposes of the legislative scheme."
>
> [*Id.* at 41, 527 *A.*2d 851 (citations omitted).]

By application of these standards it seems abundantly clear that there is no private cause of action for wrongful discharge under the Ombudsman Act.

That legislation was adopted to benefit "elderly patients, residents and clients of health care facilities serving their specialized needs and problems, [by securing to them] the same civil and human rights guaranteed to all citizens." *N.J.S.A.* 52:27G–1. The Office of the Ombudsman for the Institutionalized Elderly was, in pursuit of that goal, established "to receive, investigate and resolve complaints concerning certain health care facilities serving the elderly, and to initiate actions to secure, preserve and promote the health, safety and welfare, and the civil and human rights, of the elderly patients, residents and clients of such facilities." *Ibid.* The stated objective is to "promot[e], advocat[e] and insur[e], as a whole and in particular cases, the adequacy of the care received, and the quality of life experienced, by elderly patients, residents and clients of [covered, *see N.J.S.A.* 52:27G–2f] facilities," *N.J.S.A.* 52:27G–6; and the powers and functions of the Office of the Ombudsman are designed in the statute to foster those purposes and objectives. *See N.J.S.A.* 52:27G–7, –7.1, –8. The Office of the Ombudsman is authorized to "institute actions for injunctive relief or civil damages, *N.J.S.A.* 52:27G–7g, but its primary responsibility is to receive reports, investigate them and refer matters to other government agencies for action, including the institution of civil or criminal proceedings. *N.J.S.A.* 52:27G–7.

Manifestly, the work of the Office of the Ombudsman cannot be accomplished unless it receives reports from persons aware of facilities and practices which do not comport with the basic standards the Act was designed to promote. Accordingly, several of the Act's specific provisions encourage such reporting and

endeavor to protect persons who provide such information. Among these are the terms of *N.J.S.A.* 52:27G–14a, at issue here, which prohibit "discriminatory, disciplinary or retaliatory action" against those who make reports and, indeed, criminalize any such conduct.

With whatever protections the Act affords to persons making reports, it is clear that the beneficiaries of the Ombudsman Act are not those persons, but rather the institutionalized elderly themselves. There is nothing in the Act that evinces any legislative intention to create private causes of action for the benefit of persons reporting the conduct or conditions the Act was designed to address. Finally, although implying authority to plead such private causes of action would not be inconsistent with the underlying purposes of the legislative scheme, private litigation is clearly no part of the mechanisms enacted. *See In re State Comm'n of Investigation, supra,* 108 *N.J.* at 41, 527 *A.*2d 851. In the absence of further provision evincing a contrary intendment, the Legislature's explicit election to punish certain types of conduct by criminal sanction, with no other process expressly provided, seems to be clear enough indication of a remedy-limiting design.

We are confident that this construal sacrifices none of the enforcement integrity of the Ombudsman Act. It in no way diminishes the authority of the Office of the Ombudsman or narrows its scope of operations.

Furthermore, all the remedies which plaintiff seeks, as a result of the employment discipline or retaliation she experienced because of her reports, are available in her common law wrongful discharge cause of action, and were available to her under CEPA before the time for pleading them ran. Although we do not address the question because it is not before us in this appeal, there is no apparent impediment to plaintiff raising, as part of her case in her wrongful discharge claim under the fourth count of the amended complaint, the standards and procedures of the Ombudsman Act and her right to make valid reports, without expressly

pleading the Act as a basis for the relief she seeks. *See Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 72, 417 *A*.2d 505 (1980) ("[A]n employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy."); *see also LePore v. National Tool and Mfg. Co.*, 115 *N.J.* 226, 227, 557 *A*.2d 1371, *cert. denied*, 493 *U.S.* 954, 110 *S.Ct.* 366, 107 *L. Ed*.2d 353 (1989). The distinction we have made, between plaintiff's lack of right to plead a cause of action for wrongful discharge under *N.J.S.A.* 52:27G–14a and her ability to argue that provision's violation as a basis for prevailing in a common law action for wrongful discharge, may be without practical difference in this case, but it is a matter of conceptual consequence.

Therefore, we affirm the dismissal of the first count of the amended complaint and that portion of the third count which pleads a cause of action under *N.J.S.A.* 52:27G–14a. We reverse the trial court's order in all other respects and remand for further proceedings on the second and fourth counts as well as the vicarious liability claim of the third count.