725 A.2d 73

ANTHONY T. CIMINERA, PETITIONER–APPELLANT, v.
BOARD OF REVIEW, DEPARTMENT OF LABOR,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 2, 1999—Decided March 11, 1999.

Before Judges PRESSLER, BROCHIN and KLEINER.[1]

*Elisa Leib,* argued the cause for appellant (*Harold Leib & Associates,* attorneys; *Ms. Leib,* on the brief).

*Alan C. Stephens,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Stephens,* on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This unemployment benefits appeal arises under *N.J.S.A.* 43:21–57 to –65, the legislation that affords claimants extended benefits for a maximum period of twenty-six additional weeks during their participation in the Workforce Development Partnership Program, *N.J.S.A.* 34:15B–35 to –40, and the federally funded Job Training Partnership Program, 29 *U.S.C.A.* §§ 1501, 1792b. Although claimant, Anthony T. Ciminera, is enrolled, through the Workforce Development Partnership Program, in a computer training course,

---

[1] Judge Kleiner did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.

he was denied extended benefits by the Appeal Tribunal, whose decision was affirmed by the Board of Review, on the ground that his notification to the Department of Labor of his intention to enter into a training program was untimely. We reverse.

The facts are not in dispute. Claimant, then in his fifties, lost his employment as the marketing vice president of a manufacturing company in December 1996 when his employer filed for bankruptcy protection. His annual salary was then about $80,000. He applied for unemployment benefits, which he received for the maximum period of twenty-six weeks. On applying for benefits, claimant had an initial benefit rights interview at the unemployment office, but that interview did not include any job or training information or counseling. After the interview, he was conducted to a group session, where, he said, a woman explained the training program in general terms, stressing the availability of remedial and vocational programs. As he was the only white-collar employee among a group of blue-collar workers, some of whom were not apparently English speaking, it was his understanding that the training programs being referred to were in the nature of literacy training, remedial arithmetic, and hands-on skills he associated with the vocational high schools of his youth. He did not, therefore, understand that the group session had any particular relevance to his situation. He did, however, read the unemployment benefit handbook that the session leader had handed out, and his impression of the import of the session was confirmed by the description it contained of the Workforce Development Partnership Program as one that offered qualified workers "vocational and remedial education."

Towards the end of claimant's initial benefits period, still unemployed, he received a postcard from the local office asking him to come for an interview. The message on the postcard read in part, "We have scheduled you for an appointment to review your potential eligibility for special benefits under the Workforce Development Partnership." It appears that it was at that time that claimant first received the counseling contemplated by *N.J.S.A.*

43:21–59 and first learned that he could obtain computer training under the Workforce Development Partnership Program. He promptly enrolled in an approved course and applied for an extension of benefits.

*N.J.S.A.* 43:21–60 prescribes the criteria for eligibility for extended benefits. Subsection d(1) requires that the claimant must have notified the Department of Labor of his intended enrollment "not later than 60 days after the date of the individual's termination or layoff or not later than 30 days after the department provides notice to the individual" pursuant to *N.J.S.A.* 43:21–62, whichever is later. The notice required by *N.J.S.A.* 43:21–62a is notice "of the services and benefits available to the individual under the provisions of this act and employment and training programs provided or funded pursuant to" the New Jersey Employment and Workforce Development Act, *N.J.S.A.* 34:15D–1 to –20, and the federal Job Training Partnership Act.

It is, of course, clear that claimant did not notify the Department of his intention to enroll in approved computer training within sixty days after the termination of his employment. The sole question then is whether he provided that notification within thirty days after receiving notice of the training opportunities available to him. The Appeal Tribunal and the Board of Review were both of the view that he had not since both concluded that the required notice had been given him in early January 1997 as a result of the group session and the handbook which had then been distributed. Claimant's position is that he did not receive adequate notice until June 1997, when he was called to the local office for a counseling session. We agree with claimant, and accordingly reverse.

■ The Board of Review does not dispute claimant's version of these events. It concedes, moreover, that the only description in the handbook of the Workforce programs available is "vocational and remedial education." No illustrative list is offered, nor was any offered by the group session leader, of the types of professional, paraprofessional and technical training available under the Workforce Program. And while the Board of Review confirms

that it maintains a roster of approved programs, that list was not made available to this claimant either. As we view the matter, therefore, the question is twofold: first, did the claimant reasonably believe from the written and oral information given him in January 1997 that the available "vocational and remedial education" did not include computer training, and second, did the Department in January 1997 satisfy its statutory obligation to give him effective notice of the opportunities available under the Workforce Program? We answer the first of these questions in the affirmative and the second in the negative.

The beneficent and salutary purpose of the extended benefits program is set forth in *N.J.S.A.* 43:21–57, which states the legislative findings that motivated it and the legislative declaration of its intent. The legislative statement makes clear the intended benefits both for unemployed persons and for New Jersey employers in providing effective retraining for displaced workers in a state economy having an ongoing need for a skilled workforce. As articulated by subsection i, the goal of the program is to "enable displaced workers to obtain the high quality training and education required for success in occupations where there are demonstrated long term shortages of skilled labor." Obviously then, the program is predicated on a substantially broader scope of training opportunities than literacy, remedial arithmetic, and hands-on labor. And, indeed, the training and education available under the Workforce Program cover a broad spectrum of skills and occupations. *See generally N.J.A.C.* 12:4, 12:7. *And see Bose v. Board of Review,* 303 *N.J.Super.* 619, 697 *A.*2d 568 (App.Div.1997), as to the salutary and remedial purposes of the extended-benefits legislation.

■ We think it perfectly reasonable that the circumstances of the group session attended by claimant, considered in the light of the minimal and general information provided, would reasonably have led him to believe that the available "vocational and remedial education" was limited to providing basic competence in English and arithmetic and in vocational education as that term was understood and implemented thirty years ago. More to the point,

however, we are satisfied that the beneficent purpose of the legislation is frustrated by the Department's failure to advise claimants what the Workforce Program is really all about and what kind of training and education is really available. As we have pointed out, *N.J.S.A.* 43:21–62a requires the Department to give newly and about-to-be unemployed persons notice of *"the* services and benefits available" under Workforce (emphasis added). We view the use of the definite article as contemplating that a comprehensive explanation be given the applicant, an obligation patently not satisfied by the vague, misleading, and essentially uninformative formulation of "vocational and remedial education."

As we have also noted, *N.J.S.A.* 43:21–59 requires that counseling be offered to newly displaced workers to assist them "in obtaining the employment and training services most likely to provide the worker with the greatest opportunity for long-range career advancement with high levels of productivity and earning power." The record does not indicate why this mandated offer of counseling was made to claimant at the end of his benefit period rather than at the beginning of it. Apparently, if it is made at the end of the period, the person will still qualify for Workforce, as did claimant here. But, according to the Department's reading, that might well be too late for him to receive the extended unemployment benefits that will permit him to sustain himself financially during the period of training, a *desideratum* that is at the heart of the legislation. *See N.J.S.A.* 43:21–57e and f. Nor do we have any doubt that if claimant had received the appropriate notice at his initial interview and group session, as required by *N.J.S.A.* 43:21–62a(1), his own notice of intention to enroll would have been timely. We do not, of course, intend to suggest that the Department's actions here were in any way motivated by a purpose of withholding benefits. We merely note that a withholding of benefits in fact resulted through no real fault of the claimant but rather because of what we perceive to be an inadequate fulfillment by the Department of its statutory obligations.

We are also of the view that our determination does not impose an undue burden on the Department. It can overcome the

deficiency by giving claimants an illustrative list of training opportunities or the list of actually approved training providers. Better yet, it can ensure that one-on-one counseling designed to disclose the relevant opportunities is made available at the beginning of the benefit period rather than at its end.

We are mindful of the deference we owe administrative agencies when they construe and interpret the statutes they are charged with implementing and enforcing. Nevertheless we are not bound by those interpretations or their legal conclusions. *See, e.g., Brock v. Public Service Elec. & Gas Co.,* 149 *N.J.* 378, 383, 693 *A.*2d 894 (1997); *Board of Educ. v. Neptune Tp. Educ. Ass'n,* 144 *N.J.* 16, 31, 675 *A.*2d 611 (1996). We are persuaded that the administrative agencies here erred in construing the notice of the Workforce Program received by claimant in January 1997 as having met the substantive requirement of *N.J.S.A.* 43:21–62a.

We reverse and remand for a determination of the extended benefits to which claimant is entitled.