HAYSER, J.T.C.
In plaintiffs motion for summary judgment, the court is called upon to revisit the statutory exemption from taxation under N.J.S.A. 54:4-3.6, following the court’s decision in Roman Catholic Archdiocese of Newark v. City of East Orange, 17 N.J.Tax 298 (Tax 1998), aff'd, 18 N.J.Tax 649 (App.Div.2000), and in light of the subsequent amendment of the statutory provision.
Essential facts are not in dispute. For the tax years in question, i.e. 2001, 2002 and 2003, the plaintiff owned certain real property denoted as Block 25, Lots 1C3A and 1C3AX of the City of Newark Tax Map. The property was exempt from taxation under the subject statute as previously owned by the plaintiff as a tax-exempt organization for charitable and religious purposes. During the above tax years in question, the subject property was leased to the United States Postal Service for a post office and adjoining parking lot. Following defendant’s denial of a continued exemption for the property, and after unsuccessful appeals before the Essex County Board of Taxation, and at least one direct appeal to the Tax Court, this matter comes before this court in the present motion.
In its motion, plaintiff contends that the subject property continues its exempt status under the statute’s 2001 amendment, denoted as L. 2001, c. 18. The defendant, in its response and cross-motion, counters that the plaintiff is not entitled to the statutory exemption since the property is being leased to a “tax-immune” and not a “tax-exempt” entity.[1]
*636 In resolving this matter, the analysis must begin with a consideration of the relevant statutory language and case law.
Prior to 2001, N.J.S.A. 54:4-3.6 provided, in relevant part, as follows:
The following property shall be exempt from taxation under this chapter: ... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for religious or charitable purposes; ... the land whereon any of the buildings hereinbefore mentioned erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent____ The foregoing exemption shall apply only where the association [or] corporation claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purpose on account of which the exemption is claimed ...
Under this statutory language, the court in Roman Catholic Archdiocese of Newark, supra, 17 N.J.Tax at 320, held a tax-exempt religious corporation that leased exempt property to a board of education lost the entire exemption for the property. In response, the Legislature enacted in 2001 the following relevant amendment to this statutory provision:
[Provided that if any portion of a building used for that [religious or charitable] purpose is leased to a profit-making organization or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt from taxation, and provided further that if any portion of a building is used for a different exempt use by an exempt entity, that portion shall also be exempt from taxation ...
[L. 2001, c. 18, § 1 (emphasis added) ].
The statutory amendment accomplished two objectives. First, the amendment addressed an immediate concern of the court in Roman Catholic Archdiocese of Newark through the provision of enabling legislation. Second, the amendment permits a religious or charitable entity that is entitled to a tax exemption for property it owned and used, to lease a portion of the exempt property to a “profit-making organization” without losing the property’s entire exemption.
However, beyond simply another piecemeal amendment to the statutory scheme, the amendment represents a significant depar *637 ture from previous amendments by also clearly permitting the religious or charitable entity to maintain its full exemption from taxation for all portions of its property, including that “used” by even an unrelated exempt entity. In evaluating the applicability and relevance of this statutory amendment, a number of factors should be considered.
It is the use of the property and not the payment and use of the funds generated by the property that determines its qualification for exemption under N.J.S.A. 54:4-3.6. Christian Research Inst. v. Torn of Dover, 5 N.J.Tax 376, 386 (Tax 1983). The statute, as to religious and charitable entities, as noted, now recognizes that to the degree a portion of exempt property is used for a different exempt purpose, the owner loses no portion of its exemption from taxation for the property. While the court cannot create an exemption from the common burden of real property taxation, Brick Stores, Inc. v. Bridgewater Tp., 4 N.J.Tax 412, 416 (Tax 1982), in the area of construction of a statute having to do with taxation or exemption therefrom, the sole judicial guidepost is legislative intent. Public Service Elec. & Gas Co. v. Tp. of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977).
There can be little doubt that the statutory amendment under discussion was adopted as remedial legislation. Classically, remedial legislation is to be accorded a liberal construction, with due regard to the fulfillment of the essential legislative objective, overriding any literal interpretation that would prove inconsistent with the overall statutory purpose, and requiring also a strict construction of any stated limitation on its sweep or applicability. Crusco v. Oakland Care Center, Inc., 305 N.J.Super. 605, 610-611, 702 A.2d 1363 (App.Div.1997). A court is not precluded from interpreting a remedial statute to apply in circumstances not specifically considered by its drafters, relying instead upon the breadth of the legislative objectives and the common sense of the situation. Matter of E.D., 288 N.J.Super. 166, 169, 672 A.2d 183 (App.Div.1996).[2]
*638 A court may also perform “judicial surgery” to free a statute when the language holds the intent prisoner, by expanding or contracting words to achieve the overriding legislative intent and avoid absurd, anomalous or unreasonable results. See, for example, New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm’n, 82 N.J. 57, 75, 411 A.2d 168 (1980); Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956). Finally, a court should not become bogged down in semantics when the object of the legislative intent should prevail. Jersey City Chapter of Property Owner’s Protective Association v. City Council of Jersey City, 55 N.J. 86, 100, 259 A.2d 698 (1969).
As noted earlier, the defendant argues that the plaintiff, an exempt entity owner of certain exempt real property, is not to receive the remedial benefit of the statutory amendment, since the use of a portion of the subject property is with an entity “immune” and not “exempt” from real property taxation. It simply argues that the word “immune” literally does not appear in the statutory amendment, and thus plaintiff’s alternative use does not qualify for exemption.
The issue of exemption of federal property from state taxation has long occupied our courts. See, e.g., United States v. Mayor and Council of Hoboken, 29 F.2d 932, 938-39 (D.N.J.1928) (real property of the United States is “exempt from taxation” under federal and New Jersey law). Although under L. 1944, c. 24 the statutory exemption of the real property of the United States from real property taxation was repealed, the interplay between the terms “immunity” and “exemption” in determining State or local taxation liability continues to the present time. See, e.g., Rainhold Holding Co. v. Freehold Tp., 14 N.J.Tax 266, 271 (Tax 1994), aff'd, 15 N.J.Tax 675 (App.Div.1995) (“Since state law contains no exemption for the federal government, any such exemption must *639 be found in federal law, specifically in the doctrine of federal government immunity from state taxation.” (emphasis added)).[3] Clearly under New Jersey Law, in the final analysis, real property is either exempt or not exempt, regardless what additional nomenclature one chooses to use to describe the status.[4]
As to the issue of exemption, in the instant matter there are only two parties who could face the possibility of a tax liability arising from an assessment of the real property in question. The Postal Service, a federal government agency entitled to claim federal government immunity from state and local taxation, could not directly encounter such liability “when the levy falls on the United States itself, or on an agencyor instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.” United States v. New Mexico, 455 U.S. 720, 735, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580, 592 (1982). The prohibition arises when the tax is to be “charged to and collected from the United States,” United States v. County of Fresno, 429 U.S. 452, 459 n. 7, 97 S.Ct. 699, 703 n. 7, 50 L.Ed,2d 683, 690 n. 7 (1977), and not simply because the federal agency may indirectly make payments itself, for example, under an agreed market lease, specifically through lease payments.
*640 Barring circumstances where the federal agency could face even theoretical tax liability, the plaintiff normally would bear that responsibility for the property it has owned and permits alternative use, resulting in at least a partial taxation of the property, barring full application of the remedial statutory amendment in question.
The statutory amendment recognizes that if use of the tax-exempt property is given to a “profit-making organization,” there shall be a consequence to the extent such alternative use is given. However, the amendment further provides that if at least some use of tax-exempt property is given to another tax-exempt user, there is no taxation consequence. The latter provision represents a new chapter from simply the former’s long established consequence of a use being permitted to a for-profit entity.
Can it plausibly be argued that had the Legislature been aware of the defendant’s argument at the time the statutory amendment was enacted, that it would have intended a different consequence for someone like this exempt owner of the pre-existing exempt property, and if so on what basis? Implicit in the amendment’s adoption is that another, separate or different non-profit use would also serve the furtherance of a societal need for which public policy considerations permitted the exemption to be initially granted. It focuses on the property and its continued non-profit use.
In this regard, there is a close similarity between property that advances a “public purpose,” i.e. “an activity which serves as a benefit to the community as a whole and which at the same time, is directly related to the functions of government,” Holmdel Tp. v. New Jersey Highway Authority, 329 N.J.Super. 410, 424, 748 A.2d 128 (App.Div.2000), and property devoted to a religious, charitable or philanthropic use that serves, in even some small way, the same or similar health, welfare, and/or safety needs of the community. See also Princeton Country Day School v. State Board of Tax Appeals, et al, 113 N.J.L. 515, 520, 175 A 136 (Sup.Ct.1934) (“Exemptions from the burdens of taxation ... are only favored ... upon the theory that the concession is due as quid pro quo for
*641 the performance of a service essentially public, and which the state thereby is relieved pro tanto from the necessity of performing).” (citing Carteret Academy v. State Board of Taxes and Assessment, 102 N.J.L. 525, 528, 133 A 886 (Sup.Ct.1926), aff'd, 104 N.J.L. 165, 138 A. 919 (E. & A.1927)).
Plaintiff is not a private, for-profit entity seeking, in the first instance, a tax-exemption through an alternative use of its property. A “profit-making organization,” is neither the property’s owner nor present user. Moreover, as already noted, it is not the payment of funds for a use that determines the property’s tax status. Additionally, the court is somewhat persuaded by the conflicted argument, by analogy, that the use of tax-exempt property by a profit making entity for the furtherance of a public purpose may continue to be exempt from taxation under N.J.S.A. 54:4-3.3,[5] while a public purpose user and use of the exempt property would give rise to a liability issue for the previously exempt property and its exempt owner under the subject statute. Again, in terms of the legislative objectives to seek to continue where possible the exemption and to further unrelated not-for-profit purposes, would the Legislature have chosen to treat under the umbrella of “non-profit” activities “immune” and “exempt” properties differently, assuming even a difference, since neither has a direct tax liability by virtue of its nature or the application of the instant statutory amendment?[6]
In the final analysis, it might best be stated that every immune use is exempt from a taxation consequence but not every exempt use is immune from such a consequence (for example, the use of a portion of tax-exempt property by a “profit making organization” *642 as contemplated under the statutory amendment).[7]
For the foregoing reasons, the court has concluded that permitting the continued use of exempt property for non-profit purpose and without a taxation consequence is the overriding intent of the statutory amendment. That result is required by the common sense and breadth of the legislative objectives. The narrow distinction urged by the defendant would not further that intent and lacks a rational basis. If “judicial surgery” is necessary to free the overriding intent from the “prison” of unduly restrictive or literal language, then it should take place.
Therefore, under the facts of this case, plaintiff as an exempt entity may permit the use of a portion of its exempt property by the Postal Service, an immune or exempt entity, for its postal service functions, without any impact upon the tax liability status of the subject property, for the tax years in question, i.e. 2001, 2002, and 2003. There being no issue of fact, and plaintiff being entitled to judgment on this issue as a matter of law, summary judgment is granted. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995). Defendant’s cross motion is denied.

 It should be noted that under Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 506, 472 A.2d 517 (1984), the defendant does not dispute that the plaintiff is *636 a corporation organized for exclusively religious and charitable purposes and does not operate or use its property for profit.

 No less an eminent jurist as Learned Hand stated in Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir.1944), aff'd, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 *638 (1945) that "[t]here is no surer way to misread any document than to read it literally." The same may be said of a statute: "If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.” State v. Clark, 29 N.J.L. 96, 99 (Sup.Ct.1860).

 The decision in Rainhold Holding Co., decided prior to the 2001 remedial amendment to N.J.S.A. 54:4-3.6 under discussion, concerned the taxability of real property owned by a private property owner and leased to the United States Postal Service. As noted, no statutory provision for exemption was even implicated by an exempt entity owning exempt property. The property remained subject to local taxation, with no gain or loss. In the present motion(s) it is not disputed that nothing in the nature of the Postal Service or its postal service use gives rise to a taxation consequence or that the Postal Service is not directly liable for the assessment and payment of real property taxes that may be charged. Under Rainhold Holding Co., and similar holdings, “immunity” only comes into play as the mechanism or methodology to determine by looking to federal law whether federal property is "exempt” property under state law.

 In New Jersey, all property must be “assessed for taxation under general laws and by uniform rules," N.J. Const., art. VIII, § 1, ¶ 1, unless an "exemption” from taxation is granted "only by general laws.” N.J. Const. (1947), art. VIII, § 1, ¶ 2.

 See, for example, Center for Molecular Med. v. Belleville, 19 N.J.Tax 342, 352 (Tax 2001), rev’d on other grounds, 357 N.J.Super. 41, 49, 813 A.2d 1243 (App.Div.2003).

 Although it clearly is not dispositive, even as a semantical point, it is interesting to note that Black’s Law Dictionary (7th ed.1999) defines “immunity” to include "any exemption from a duty or liability,” and refers one to the above definition of immunity in defining "exemption.”

 The journey of a statutory enactment is rarely an orderly process. As noted by Otto von Bismark (1815-1898), the Prussian chancellor) in remarks later attributed to the British Prime Minister Benjamin Disraeli (1804-1881), "Laws are like sausages. It's better not to see them being made."